IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEFFREY M.,

        Plaintiff,

    v.                                            Civil Action No.
                                                   3:24-CV-981 (DEP)

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM      PETER A. GORTON, ESQ.
P.O. Box 89, 1500 East Main Street
Endicott, NY 13760-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.            GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

---

[1]     Plaintiff's complaint named Martin O'Malley, in his official capacity as the Commissioner of Social Security, as the defendant. On May 18, 2025, Frank Bisignano took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g). The clerk is respectfully directed to amend the court's records to reflect this change.

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of a partially unfavorable administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g) are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on July 30, 2025, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at certain relevant times, and thus is not entitled to benefits under the Social Security Act for that period, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   August 4, 2025
         Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------x
JEFFREY M.,

                              Plaintiff,

vs.                           3:24-CV-981

FRANK BISIGNANO, COMMISSIONER OF
SOCIAL SECURITY,

                              Defendant.

------------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on July 30, 2025, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | LACHMAN, GORTON LAW FIRM<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, New York  13760-0089<br>  BY:  PETER A. GORTON, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>6401 Security Boulevard<br>Baltimore, Maryland  21235<br>  BY:  GEOFFREY M. PETERS, ESQ. |

*Jodi L. Hibbard, RMR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1               (The Court and counsel present by telephone.)
2               THE COURT:  Plaintiff has commenced this proceeding
3    pursuant to 42 United States Code Section 405(g) to challenge
4    an adverse determination by the Commissioner of Social
5    Security finding that he was not disabled at the relevant
6    times and therefore ineligible for the benefits for which he
7    applied.
8               Before addressing the merits, I did want to broach
9    the subject of consent.  When this case was filed, it was
10   assigned to United States Magistrate Judge Thérèse Wiley
11   Dancks.  The consent form that was signed on August 23, 2024
12   by plaintiff's counsel consented specifically to her
13   jurisdiction to hear and decide the case with direct review
14   to the Second Circuit Court of Appeals.  I know that the
15   docket sheet, when it was transferred to me, suggested that
16   if consent was to be withdrawn, it should be withdrawn within
17   a certain specified period of time.  But I will confirm with
18   you, Attorney Gorton, do you consent to my hearing and
19   deciding this case with direct appeal to the Second Circuit
20   Court of Appeals?
21              MR. GORTON:  Yes.
22              THE COURT:  Thank you.  The background of this case
23   is as follows:  Plaintiff was born in October of 1980.  He is
24   currently 44 years of age, he was 41 at the time that he was
25   last insured for benefits on June 30, 2022.  He stands 6 foot

1    1 inches in height and weighs approximately 167 pounds.
2    Plaintiff lives in Binghamton alone.  He has four years of
3    college and received a sociology degree.  While in school he
4    was in regular classes.  Plaintiff drives.  He has a
5    relatively close relationship with his mother and stepfather.
6    Apparently his parents divorced when he was extremely young
7    and his father committed suicide when he was approximately 22
8    years old.
9              Mentally, and this case involves plaintiff's mental
10   conditions, he suffers from various disorders, including
11   depressive disorder, bipolar disorder, anxiety disorder,
12   agoraphobia with panic disorder.  Plaintiff has a history of
13   alcohol abuse but does not apparently engage in use of
14   alcohol.  He's a daily smoker of THC against the advice of
15   his doctors.  Plaintiff has not had any psychiatric inpatient
16   treatment.  Over time he's been prescribed lorazepam, Xanax,
17   Spravato and Latuda to address his conditions.  Plaintiff
18   sees Licensed Clinical Social Worker, or LCSW, Barry Schecter
19   and has since April 23, 2020.  His primary physician was
20   Dr. Keith Nichols who retired and after that retirement he
21   began seeing Dr. Ejiro Agboro-Idahosa in or about June of
22   2022.  I will refer to that person as Dr. Idahosa.
23             Plaintiff stopped working on or about January 1,
24   2020.  While working he was an auto parts retailer both for a
25   company and on his own.  He has been a food pantry volunteer.

1    He tried to open an auto repair shop and leased space,
2    installed a lift but could not find a mechanic to work,
3    that's at page 420, and therefore the shop did not open.
4              In terms of activities of daily living, plaintiff
5    is able to groom himself, care for his personal needs, he
6    does a minimum amount of cooking, he claims that he receives
7    leftovers and food from other people and eats one or two
8    times a day because of his depression.  He can do minimal
9    cleaning, laundry, some shopping, cares for his dog,
10   including walking the dog.  He does engage in some leisure
11   activities, he watches television and listens to the radio.
12             Procedurally, plaintiff applied for Title II
13   benefits on January 6, 2022, alleging an onset date of
14   January 1, 2020.  He alleged at page 204 of the
15   Administrative Transcript disability based on anxiety,
16   depression, agoraphobia, and panic attacks.  A hearing was
17   conducted by Administrative Law Judge, or ALJ, Kenneth
18   Theurer on September 25, 2023, to address plaintiff's
19   application.  At that hearing, testimony was also elicited
20   from a vocational expert.  On October 9, 2023, Administrative
21   Law Judge Theurer issued an adverse determination which
22   became a final determination of the Agency on June 6 -- I'm
23   sorry, June 10, 2024, when the Social Security Administration
24   Appeals Council denied plaintiff's application for review.
25   This action was commenced on August 9, 2024, and is timely.

1            In his decision, the administrative law judge
2    applied the familiar five-step sequential test for
3    determining disability.  He first noted that plaintiff's last
4    insured date was June 30, 2022, meaning that this case
5    involves a closed period from January 1, 2020 to June 30,
6    2022.
7            At step one, the administrative law judge concluded
8    plaintiff had not engaged in substantial gainful activity
9    over that relevant period but did note that there were some
10   spare parts sales and although no earnings were reflected,
11   nonetheless that effort has been considered by the
12   administrative law judge.
13           At step two, Administrative Law Judge Theurer
14   concluded that plaintiff does suffer from severe impairments
15   that impose more than minimal limitations on his ability to
16   perform basic work functions, including anxiety disorder,
17   depressive disorder, and agoraphobia.
18           At step three, the administrative law judge
19   concluded that the conditions do not meet or medically equal
20   any of the listed presumptively disabling conditions set
21   forth in the Commissioner's regulations, specifically
22   considering Listings 12.04 and 12.06.  The ALJ concluded in
23   that regard that plaintiff's condition does not meet either
24   the B or C criteria of those listings.
25           The administrative law judge next surveyed the

```
 1   available evidence and concluded that plaintiff is capable,
 2   notwithstanding his limitations, of performing a full range
 3   of work at all exertional levels with the following
 4   exceptions:  The claimant's work is limited to simple,
 5   routine, and repetitive tasks in a work environment free of
 6   fast-paced production requirements as would be experienced on
 7   an assembly line; involving only simple work-related
 8   decisions with few, if any, workplace changes; he can
 9   interact with supervisors and coworkers on an occasional
10   basis throughout the workday, after learning their job duties
11   from an instructional or demonstrational lesson; he can have
12   no more than incidental contact with the public.  I define
13   incidental as more than never and less than occasional.
14   Simply, the job should not involve direct interactions with
15   the public, but the claimant does not need to be isolated
16   away from the public.
17            Applying this RFC finding, the administrative law
18   judge concluded at step four the plaintiff is unable to
19   perform his past relevant work and proceeded to step five
20   where, with the assistance of testimony from the vocational
21   expert, he concluded that there is available work in the
22   national economy that plaintiff is capable of performing,
23   citing as representative positions those of laundry laborer,
24   cleaner II, and dishwasher, and therefore found that
25   plaintiff was not disabled at the relevant times.
```

1             As the parties know, this case is subject to review
2    to determine whether substantial evidence supports the
3    resulting determination and correct legal principles were
4    applied.  As the Commissioner's counsel has noted, the
5    standard is extremely deferential.  That was noted by the
6    Second Circuit Court of Appeals in *Brault v. Social Security*
7    *Administration Commissioner*, 683 F.3d 443, Second Circuit,
8    2012, and has been reiterated many times, including
9    relatively recently by the Circuit in *Schillo v. Kijakazi*, 31
10   F.4th 64 from 2022.  It is a more rigorous standard than even
11   the clearly erroneous standard and as the Second Circuit
12   noted in *Brault*, "The substantial evidence standard means
13   once an ALJ finds facts, we can reject those facts only if a
14   reasonable fact finder would have to conclude otherwise."
15           Under the standard, it doesn't matter what my
16   determination would be if I was deciding the case,
17   specifically the issue of disability.  Instead, I must
18   determine whether the administrative law judge's
19   determination was supported by substantial evidence, and
20   again, whether correct legal principles were applied.
21           In this case, plaintiff alleges that the
22   administrative law judge committed error in evaluating the
23   medical opinions of record, and specifically in crediting the
24   prior administrative medical findings of the state agency
25   physicians and the consultative examiner Dr. Long, and

1  rejecting opinions from two treating primary sources and
2  plaintiff's therapist.
3       Under the regulations which took effect in March of
4  2017, the Commissioner does not give any specific weight or
5  defer to any medical opinions, including from treating
6  sources, but instead must consider whether they are
7  persuasive by primarily considering whether they are
8  supported by and consistent with the record in the case.  20
9  C.F.R. Section 404.1520(c).  The ALJ must articulate to a
10 degree that permits meaningful judicial review how persuasive
11 each medical opinion is and must specifically explain how he
12 or she considered the factors of supportability and
13 consistency of those opinions.
14      The Second Circuit has noted that the -- if there
15 is not specific discussion of the factors of consistency and
16 supportability but a searching review of the record reveals
17 that they were, those factors were indeed considered, then
18 that error can be deemed harmless.  *Loucks v. Kijakazi*, 2022
19 WL 2189293, Second Circuit, June 17, 2022, and *Camille v.*
20 *Colvin*, 652 F.App'x 25, Second Circuit 2016.
21      In this case, there are prior administrative
22 findings from two physicians.  The first is from Dr. O.
23 Fassler, it is dated April 22, 2022, and it appears at
24 Exhibit 1A of the Administrative Transcript.  In the
25 worksheet, there are moderate limitations noted.  At page 69,

9

1   the conclusion is, "Based on the objective findings, the
2   claimant retains ability to perform unskilled work in a low
3   contact setting."  There is a somewhat healthy discussion of
4   the record, it could be more thorough, but -- and the
5   worksheet indicates, as I said, moderate limitations which of
6   course the courts have said do not preclude a plaintiff from
7   conducting unskilled work.  *Porteus v. O'Malley*, 2024 WL
8   2180203, Second Circuit, 2024, and *Richard H. v. Saul*, 2020
9   WL 467734, Second Circuit, 2020.
10          The second is from Dr. E. Kamin.  It is dated
11  August 17, 2022, it appears at 3A of the Administrative
12  Transcript.  That contains, as his predecessor, moderate
13  limitations noted on the worksheet portion, contains a little
14  more thorough, little more thorough explanation including
15  considering more recent medical treatment records, but
16  upholds the opinion of Dr. Fassler.
17          The third opinion that supports the RFC is from
18  Dr. Sara Long.  It's based upon a consultative examination,
19  it is dated April 6, 2022.  It appears at 6F of the record,
20  443 to 446.  The medical source statement from Dr. Long
21  indicates basically no limitations, including of adequately
22  interacting with others, maintaining attention and
23  concentration and maintaining a regular schedule.  It also
24  indicates, "There may be moderate limitations regarding
25  regulating emotions."

(315) 234-8547

1           Those three medical opinions are discussed
2    collectively at page 20 of the Administrative Transcripts by
3    ALJ Theurer.  The opinion of -- the opinion of ALJ Theurer
4    finds those to be persuasive, noting that they are --
5    Dr. Fassler's and Dr. Kamin's opinions are supported by
6    detailed narrative rationale and the rationale cites
7    supporting medical status examination findings and other
8    evidence from the underlying record.  I could agree with
9    plaintiff's counsel they could have been more thorough, but
10   it also indicates the medical source statements from Dr. Long
11   is well supported by the detailed findings from her mental
12   status examinations and I agree with that.  The findings were
13   generally unremarkable.  And thirdly, the opinions in the
14   paragraph are generally consistent with other mental status
15   examinations in the record and it cites many treatment notes
16   to that effect.
17          The other thing I will note is that it's well
18   accepted that even opinions from prior administrative medical
19   findings from nonexamining consultants can supply substantial
20   evidence to support a determination if they are supported
21   themselves.  *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761 from
22   the Second Circuit, 2023.
23          The contrary opinions come from three, what I will
24   refer to as treating sources.  The first is from LCSW Barry
25   Schecter dated August 13, 2023.  It is extremely limiting.

1  It indicates that plaintiff is either markedly or extremely
2  limited in virtually all of the domains set out in the form.
3  It's basically a check-box form.  It indicates that plaintiff
4  is expected to be off task more than 33 percent of the day
5  and absent three days or more per month.  There is relatively
6  little explanation, although there is, on page 485, some
7  explanation which arguably supports that opinion.  The
8  administrative law judge considered and rejected that opinion
9  at page 20 and continued on really to page 22.
10           The second is from Dr. Keith Nichols who was
11  plaintiff's original primary care provider.  It is dated
12  August 11, 2023, appears at 478 to 480 of the record.  And
13  that is even more limiting.  It virtually indicates that
14  plaintiff is extremely limited in every one of the domains
15  listed, would be off task more than 33 percent of the day and
16  absent three or more days per month.  Those are the maximum
17  categories set forth in the worksheet.  And there's very
18  little discussion as to why that is.
19           And the last comes from Dr. Idahosa, 462 to 464.
20  It is not dated, although the questionnaire is dated August
21  of -- August 7, 2023.  It's a little bit more varied, some
22  extreme, some marked, and some more than slight limitations.
23  Consistent, though, when it comes to 33 percent of the day
24  off task and three days or more absent.  Some explanation
25  again offered.

1              The administrative law judge found those not to be
2     persuasive.  Although they are consistent with each other,
3     they are not consistent with underlying treatment notes
4     showing a positive response to mental health counseling and
5     psychotropic medication.  They are also inconsistent with
6     mental capacity indicated in claimant's activities of daily
7     living.
8              The administrative law judge goes on to
9     specifically discuss the treatment notes from LCSW Schecter
10    who, it was noted, did not conduct any, did not conduct any
11    psychiatric evaluations.
12             There's also a healthy discussion that continues on
13    page 21 and 22 and explains, in my view, why the
14    administrative law judge did not find those to be persuasive.
15    As you know, in the first instance it is for the
16    administrative law judge, and not the court, to weigh
17    competing medical opinions.  *Veino v. Barnhart*, 312 F.3d 578,
18    Second Circuit 2002.
19             I have reviewed carefully the treatment notes from
20    the two treating providers, two medical doctors, and
21    Therapist Schecter, and while I would -- and as included in
22    1F, 2F, 3F, and 13F.  They show, for example, that plaintiff
23    felt his life fell apart during COVID, that's at 467, and he
24    also had anxiety over beginning the Spravato treatment which
25    occurred over four weeks, that's at 427 and 428.  But 12/21

1  into 2022, plaintiff denied disability, he was able to
2  formulate plans to open a shop, 399, 403, 405, replete with
3  indications that he volunteered at a food pantry at 392, 396,
4  398, 401.  He agreed to become a part of the food pantry
5  team, 397.  There was a hiatus in treatment from Therapist
6  Schecter from September 3, 2020 to December 3, 2021, more
7  than one year.  That's at 407 to 420.  And while he was being
8  treated, Therapist Schecter consistently noted that plaintiff
9  was stable on medications.
10         There was also a hiatus in treatment with
11 Dr. Nichols from October 27, 2020 until April 26, 2021, and
12 again, April 21, 2021 to October 26, 2021.  And it appears to
13 me that by February 4, 2022, he was stable on his
14 medications.
15         In sum, the treatment notes of Dr. Nichols,
16 Dr. Idahosa show good response to treatment and medications.
17 There were very few mental status examinations in the record.
18         I find that Dr. Fassler, Dr. Kamin, and Dr. Long's
19 opinions are consistent with each other and with the
20 treatment notes in the record and are well supported.  While
21 Dr. Nichols, Dr. Idahosa and Dr. -- and Therapist Schecter,
22 while they are consistent with each other, are not
23 necessarily consistent with the treatment notes.  It appears
24 to me based on the record that the reason that plaintiff was
25 unable to open his car repair business is that he was not

1    able to find a mechanic to work, that's at page 420.  As I
2    indicated, he does seem to have multiple sessions
3    volunteering at the food pantry.  On February 4, 2022, that's
4    at 431 of the record, he indicated he likes the feeling of
5    being with people.  The falling apart during the pandemic
6    appears in the intake prepared by June -- on June 6, 2022 by
7    Dr. Idahosa at page 467 where he says his life fell apart
8    during the pandemic.  But I think the record clearly shows
9    improvement with medication and treatment.
10              So in sum, I find that the administrative law judge
11   properly evaluated the consistency and supportability factors
12   of the six opinions of record and exercised his judgment to
13   weigh those conflicting opinions and explained his reasoning
14   in a fashion that permits meaningful judicial review.  So I
15   will grant judgment on the pleadings to the defendant, order
16   dismissal of plaintiff's complaint, and I will issue a short
17   form order memorializing that determination.
18              Thank you both for excellent presentations, and I
19   hope you enjoy the rest of your summer.
20              MR. GORTON:  Thank you, your Honor, take care.
21              (Court Adjourned, 3:27 p.m.)
22
23
24
25

```
 1                CERTIFICATE OF OFFICIAL REPORTER
 2
 3
 4         I, JODI L. HIBBARD, RMR, CRR, CSR, Federal
 5    Official Realtime Court Reporter, in and for the
 6    United States District Court for the Northern
 7    District of New York, DO HEREBY CERTIFY that
 8    pursuant to Section 753, Title 28, United States
 9    Code, that the foregoing is a true and correct
10    transcript of the stenographically reported
11    proceedings held in the above-entitled matter and
12    that the transcript page format is in conformance
13    with the regulations of the Judicial Conference of
14    the United States.
15
16                     Dated this 31st day of July, 2025.
17
18
19                          /S/ JODI L. HIBBARD
20                          JODI L. HIBBARD, RMR, CRR, CSR
                            Official U.S. Court Reporter
21
22
23
24
25
```

JODI L. HIBBARD, RMR, CRR, CSR
(315) 234-8547